**File a Motion:**

[23-12347-amc William E. Sullivan, Jr.](#)

| | | |
|---|---|---|
| Type: bk | Chapter: 13 v | Office: 2 (Philadelphia) |
| Assets: y | Judge: amc | Case Flag: Repeat-PAEB, RepeatPACER |

<div align="center">

**U.S. Bankruptcy Court**

**Eastern District of Pennsylvania**

</div>

Notice of Electronic Filing

The following transaction was received from DENISE ELIZABETH CARLON entered on 11/15/2024 at 11:04 AM EST and filed on 11/15/2024

**Case Name:**  William E. Sullivan, Jr.
**Case Number:**  [23-12347-amc](#)
**Document Number:** [65](#)

**Docket Text:**
Motion for Relief from Stay *re: 3121 Holly Road, Philadelphia, PA, 19154.* Fee Amount $199.00, Filed by Rocket Mortgage, LLC f/k/a Quicken Loans, LLC f/k/a Quicken Loans Inc. Represented by DENISE ELIZABETH CARLON (Counsel). Objections due by 11/29/2024. (Attachments:# (1) Proposed Order# (2) Note# (3) Mortgage# (4) Assignment of Mortgage# (5) Service List) (CARLON, DENISE)

The following document(s) are associated with this transaction:

**Document description:Main** Document
**Original filename:Sullivan** MFR.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=l008166204 [Date=l1/15/2024] [FileNumber=32359471 -0] [lllblc549del2bbfe4bc49fcle55a0589f207768f8d379b2ea046d1206922675e 6cl2757b39c54328c08081d85e0e4f86258842e43409f02a74d8b2d0d569763]]
**Document description:Proposed** Order
**Original** filename:C:\fakepath\Sullivan Order.pd[
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=l 1/15/2024] [FileNumber=32359471 -1] [6d379460c89d3c2982e8cd3a602f8c13156f631b0d7ecaceba8e68f3d6d2ca702 266ld703267d3212cbcablcb74a9c38ab2fac803a69d62168e2d43ef88e7a6c]]
**Document description:** Note
**Original** filename:C:\fakepath\Sullivan Note.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=l 1/15/2024] [FileNumber=32359471 -2] [314ac48718296eeed396ee6c71b5a278eb7ef6b754bfffbb3052381dbl6217b0b 2c29ef3943a65b57eb0b62al4b34al75a07227blle0026408e3dd9fdla39786]]
**Document description:** Mortgage
**Original** filename:C:\fakepath\Sullivan Mortgage.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=l008166204 [Date=l 1/15/2024] [FileNumber=32359471 -3] [82996d30e6602b7d1038ebe470956806fd777a9d22f9d408fd6c9bf157895e8f0 40dd2b5854135a99cd60f7d87a78cac0ec53c689e2b8b23aa0bbac2f7876139]]
**Document description:** Assignment of Mortgage
**Original** filename:C:\fakepath\Sullivan AOM.pdf
**Electronic document Stamp:**

[STAMP bkecfStamp_ID=l008166204 [Date=11/15/2024] [FileNumber=32359471
-4] [51b0f6fe4490bd9bb9clc32ccb874cbe3c8200fil2dacc0687fa2al610ff955ee4
87217a3438eb9c2678db63210a352aelecc37e9c5c04af7169dda1960649f4e]]

**Document description:Service** List
**Original** filename:C:\fakepath\Sullivan COS.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=l008166204 [Date=l 1/15/2024] [FileNumber=32359471
-5] [649a4bf94acf33d93b07c00a7e902a37ecbbac4265bd525c199b5da3444f9892a
75107a7455238dd0007325f6931020bfbdc530e68e7dlb7d6aa764b4233beefj]

### 23-12347-amc Notice will be electronically mailed to:

DENISE ELIZABETH CARLON on behalf of Creditor Rocket Mortgage, LLC f/k/a Quicken Loans, LLC f/k/a
Quicken Loans Inc.
bkgroup@kmllawgroup.com

SHARON S. MASTERS on behalf of Debtor William E. Sullivan, Jr.
shmasters@hotmail.com, G65312@notify.cincompass.com

United States Trustee
USTPRegion03.PH.ECF@usdoj.gov

KENNETH E. WEST
ecfemails@ph 13trustee.com,  philaecf@gmail.com

KENNETH E. WEST on behalf of Trustee KENNETH E. WEST
ecfemails@ph13trustee.com, philaecf@gmail.com

### 23-12347-amc Notice will not be electronically mailed to:

Atlas Acquisitions LLC
492C Cedar Lane, Ste 442
Teaneck, NJ 07666

Quantum3 Group LLC as agent for
Sadino Funding LLC
PO Box 788
Kirkland, WA 98083-0788

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:  William E. Sullivan Jr. | CHAPTER 13 |
| Debtor(s) | |
| | |
| Rocket Mortgage, LLC f/k/a Quicken Loans, LLC f/k/a Quicken Loans Inc. | |
| Movant | |
| vs. | NO. 23-12347 AMC |
| | |
| William E. Sullivan Jr. | |
| Debtor(s) | |
| | |
| KENNETH E. WEST ESQUIRE | |
| Trustee | 11 U.S.C. Section 362 |

## RESPONSE TO MOTION OF Rocket Mortgage, LLC f/k/a Quicken Loans, LLC f/k/a Quicken Loans Inc.
## FOR RELIEF FROM THE AUTOMATIC STAY
## <u>UNDER SECTION 362</u>

1.      Admitted.

2.      Admitted.

3.      Denied. Strict proof is demanded..

4.       Admitted.

5.      Admitted.

6.      Denied.

7.      Denied.

8.      Denied.

9.       Denied.

10.      No response is required.

WHEREFORE, Debtor/Respondent Movant prays that an Order be entered denying the Motion for Relief from Stay.

/s/ Sharon S. Masters
Sharon S. Masters, Esq.

Attorney for Debtor/Respondent

Dated: 12/4/2024

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE:  William E. Sullivan Jr. | CHAPTER 13 |
| Debtor(s) | |
| | |
| Rocket Mortgage, LLC f/k/a Quicken Loans, LLC f/k/a Quicken Loans Inc. | |
| Movant | |
| vs. | NO. 23-12347 AMC |
| | |
| William E. Sullivan Jr. | |
| Debtor(s) | |
| | |
| KENNETH E. WEST ESQUIRE | **11** U.S.C. Sections 362 |
| Trustee | |

## ORDER

AND NOW, this          day of                    , 2024 at Philadelphia, upon consideration of the Motion for Relief, Debtor's Response thereto, and the entire record, it is hereby ORDERED that the Motion is DENIED.

_____
Ashely M. Chan, Chief Judge
United States Bankruptcy Court

# Note

Sullivan Jr, W, 111am

MERS MIN:

March 9. 2017      Philadelphia      PA
*(Date)*      *(City)*      *(State)*

3121 Holly Rd
Philadelphia.PA 19154-1707
*(Property Address)*

1.  **BORROWER'S PROMISE TO PAY.** Jn return for a loan that I have received, I promise to pay U.S. $176,641.00 (this amount is called "Principal"), plus interest to the or er of the Lender. The Lender is **Quicken Loans Inc.**

    I will make all payments under this Note in the form of cash, check or money order.

    I understand that the Lender may transfer this Note. The Le11der or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2.  **INTEREST.** Interest will be i::harged on 1111paid principal until the foll amount of Principal has been paid. I will pay interest at a yearly rate of    **3.875%.**

    Thr:: interest rate required by this Section 2 is the rate I will pay both before and after any Survival Ev nt as defined in this Note.

3.  **PAYMENTS**

    (A) Time and Place of Payments. I will pay principal and interest by making a payment eve1y month.

         I will make my monthly payment on the 1st day of each month beginning on May 1. 2017 .I will make these payment5 every month until I have paid all of the princip l and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled d\Je date and will be applied to interest and other items in the order described in the Se-0urity Instrument before Principal. If, on    Apri L 2047 , I still owe amounts under this Note, I will pay those amouQts in fi111 on that date, which is called the "Maturity Date." I wil.l continue to pay those amounts both before and after any Survival Event as defined in this Note, until 1 have paid all of the principal and interest and any other charges described below that I may owe under this Note.

    I will make my monthly payments at P.0. Box 6577. Caro1 Stream. IL 60197      or at a different place if required by the Note Holder.

    (B) **Amount of Monthly Payments.** My monthly payment will be **in** the amount of U.S. $830.64

4.  **BORROWER'S RIGHT TO PREPAY. I** have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When l make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

    I may make a full Prepayment or partial Prepayml'.lnts without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment.to any accrned and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note, If l make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

FHA Fixed Rate Note-Pennsylvania
Bankers System™ VMP ®
Wolters Kluwer Financial Services



**5.** **LOAN CHARGES.** If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that t.be interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this ref1.md by reducing the Principal I owe under this Note or by making a di.rect payment to me. If a refund redtJces Principal, the reduction will be treated as a partial Prepayment.

6. BORROWER'S FAILURE TO **PAY AS** REQUIRED

   (A) Late Charge for Overdue Payments. If the Note Holder has not received the full amount of any monthly payment by the end of Fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the; charge will be 4.000% of my overdue payment of principal and interest.

       I will pay this late charge proniptly but only once on each late payment.

   (B) **Default.** If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

   (C) **Notice** of **Default.** If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days afteF the date on which the notice is mailed to me or delivered by other meaµ.s,

   (D) No Waiver By Note Holder. Even if, at a time when I am in default, the Note Holder does not require me to pay imme<latedly in full as des,cribed above, the Note Holder will still have the right to do so if I am in default at a later time.

   (E) Payment of Note Holder's Costs and Expenses.If the Note Holder has required me to pay immedia ely in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees. I will pay the Note Holder back for those expenses paid by the Note Holder both before and after any Survival Event as defined in this Note.

7. **GIVING OF NOTICES.** Unless applicable law requires a different method, any notice th?t must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice ofmy different address.

   Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address ifI am given a notice ofthat different address.

8. **OBLIGATIONS** OF **PERSONS UNDER THIS NOTE.** If 111ore than oue persop signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount. owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Auy perso11 who takes over these obligatio11s, including the obligations of a gua1:antor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all ofus together. This means that any one ofus may be required to pQy all of the amounts owed under this Note.

9. **WAIVERS.** I and any other person who has obligations under this Note waive the rights of ► resentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

FHA Fixed Rale Nole-Pennsylvania
Blinkers Sy•lem§M VMP ®
Wolters Kluwer Flnoncial Services

1/21/2015
VMP1R(PA) ( 1603).00
Page 2 of 3

10. **UNIFORM SECUREDNOTE.** This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protect.ions given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security De d (the "Security Instn1mcnt"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instn1ment describes how nd under what conditions I may be required to make immediate payment in full of all amounts I owe up.der this Note. Some of those conditions are described as follows:

> If aII or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest iu Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrnrneot. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

> If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 wit.bin which Borrower must pay al I sums secured by this Security Instrument. If Borrower foils to pay these sums prior to the expiration of this period, Lender may iq.voke any remedies permitted by this Security Instrument without further notice or demand on Bon-ower.

11. EFFECTOF **SURVIVAL EVENTS.** For purposes of this Note, "Survival Event" is efioed as folk:,ws:

(A) any default described in Section 6(B) of this Note;

(B) Noteholder requiring me to pay immediately the full amount of Principal which has not been paid and all the int rest that l owe on that amount under Section 6(C) of this Note;

(C) Noteholder requiring immediate payment in full of all sums secured by the Security Instn1ment;

(D) the Maturity Date as defined in this Note;

(E) tile entry of any judgment against 1ne under this Note; and

(F) the e1itry of any judgment under the Security lllstnnnent.

```
This is a contract under seal  and may be enforced under 42 PA. C.S. Section 5529(b).
```
WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____  03/09/2017 _   _(Seal)_        _____ =--_(Seal)_
William Sullivan Jr                             **-BorrQwer**                                    **-Borrower**


_____ _(Seal)_        _____ _(Seal)_
                                **-Borrower**                                    **-Borrower**


D Refer to the attached *Sig, alure Addendum* for additional parties and signatures.

Loan Orig-·OrganizatiorGuicken Loans Inc.
**NMLS ID:**
Loan Originator:Wi 11am Lemon
**NMLSID:-**

**Without** *rrn l* Only)
Pay To the Order of

QUICKEN LOANS INC.

By _TRACEYbuiRie_ AA
CAPTURE **MANAGER**

FHA Fixed Rate Note-Pennsylvania                              1/21/2015
Bankers SystemGTM  VMP ®                                      VMP1R(PA) (1603).00
Wolters Kluwer Financial Sal',/Ices                          l>age3 ol 3

Case 23-12347-amc   Doc 68-5 (Secure Pro   Exhibit 1913308d92606806)\f(Desc Main
Document 7Aa Page 8 of 39

Receipt#:-

Records Department    Doc Code: ■

MORTGAGE
COVERSHEET

BRT# ■■■■■■■

<u>RECORD AND RETURN TO:</u>
All Service Abstract
314 West Lincoln Highway
Suite# 1
Penndel, PA 19047

<u>PREPARED BY</u>:
Robert Bowlson
1050 Woodward Ave
Detroit, MI 48226-1906

22 pages

Parcel Number:

**Prepared By:**
Robert Bowlson
1050 Woodward Ave
Detroit. MI 48226-1906
(313)373-0000

**Return To:**
Document Management
Quicken Loans Inc.
1050 vJoodward Ave
Detroit. MI 48226-1906

**Premisei;,:**
3121 Holly Rd
Philadelphia. PA 19154-1707

| Mortgage | |
|---|---|



MIN:

## DEFINITIONS

Words used in multiple sections of this document are **defined** below and other words are defined in Sections J. 10. 12, 17. 19 and 21. Certain mies regarding the usage of words used **io** this document arc also provided in Section I$.

(A)   **"SecurityInstrument"** means this document. which is dated   March 9. 2017   . together with all Riders to this document.

R:S-Penn$y/vania
Bankers Ś.r.\IO<TIS™ VIAP ®
Wolter; Kluwer Financial Servic

91301201•
VMP4N(PA) (1603) 00
Paoe 1 o/20

# Exhibit A

ALL THAT CERTAIN land and premises, Situate in the 66th Ward of the City of Philadelphia and State of Pennsylvania.

BEGINNING at a point in the Northeasterly curved line of Holly Road distance 201.90 feet Southeastwardly measured along the tangent and curved Northeasterly line of Holly Road from the Southeasterly end of the curve connecting the Northeasterly line of Holly Road with the Southeasterly line of Sweet-Briar Road said connecting curve having a radius of 15 feet, said beginning point also being in the extended middle line of party wall between premises herein described and premises adjoining on the Northwest; thence Southwestwardly along the curved Northeasterly line of Holly Road curving to the left with a radius of 732.87 feet an arc distance of 18.03 feet to a point in the extended middle line of party wall between premises herein described and premises adjoining on the Southeast; thence North 37 degrees 38 minutes 54 seconds East through the middle line of last mentioned party wall and the extensions thereof 157.77 feet to a point; thence Northwestwardly along a curve, curving to the right, with a radius of 575.37 feet an arc distance of 18.04 feet to the extended middle line of the first mentioned party wall; thence South 37 degrees 38 minutes 54 seconds West through the middle line of said party wall and the extensions thereof 157.57 feet to the place of beginning.

BEING Lot No. 126 as shown on Rambler Park **Plan** of Lots for the Mack Building Co., by William Spencer Erwin, Civil Engineer dated the 19th day of January A.D. 1959, Revised the 3rd day of February A.O. 1959.

TOGETHER with and subject to the free use in common with adjoining owners, tenants and occupiers on the Northwest io and to the Common Driveway between premises herein described and premises adjoining on the Northwest and the common walkway between premises herein described and premises adjoining on the Southeast.

BEING known as No. 3121 Holly Road.

OPANO. █████████

BEING the same premises which John W. Wiley, **Jr.,** by Deed dated 10/14/2005 and recorded 10/27/2005 in the Office of the Recorder of Deeds in and for the County of Philadelphia in Document No. 51301128, granted and conveyed unto Michele A. Morgan.

&lt;B&gt; "Borrower"is Will i am Su11iv an Jr.  a sing1e man and Angela Marie Hagey . a single woman

Borrower is the mortgagor under this Security Instrument.

(C)  **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors aod assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has a mailing address of P.O. Box 2026, flint, MI 48501-2026, and a street address of 1901 E Voorllees Street, Suite C, Danville, TL 611D4. The MERS t lephone number is (888) 679-MERS.

(D)  "Lender"is Quicken Loans Inc.

Lender is a Corporation
-organized and existing under the laws of    the State of Michigan
Lenders address is 1050 Woodward Ave. Detroit, MI   48226-1906

(E)  "Note"mc:llm; the promissory note signed by Borrower and dated March 9. 2017        . The Note states that Borrower owes Lender One Hundred Seventy Six Thousand Six Hundred Forty One and 00/100
Dollars (U.S. $ 176.641. 00    ) plus interest. Borrower bas pr?mised to pay this debt in regular Periodic Payments and to pay the debt io full not later than    Apr, l 1,  2047    .

(f)  "Property"means the property that is described below under the beading "Transfer of Rights in the Property."

(G)  "Loan" means the debt evidenced by the Note, plus interest, ao.d late charges due under the Note, and all sums due under this Security Instrument., plus interest.

.HA. l.""19119• Wl!t MERS.P""1"5y1Yania
B3" 111" Sy,,temJ™  VMP ill
woiws Kr_.F""111cial  Nic.es

9/3O(2()14
VMP..M(?.o\.) ( 1&l3) 00
2o120



**(H)** "Rlders"means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower (cbeck box as applicable]:

☐ Adjustable Rate Rider          ☐ Condominium Rider          ☐ Planned Unit Development Rider

☐ Other **Legal Attached**

☐ Rehabilitation Loan Rider

(1)  "Applic.nble Law" means all controlling applicable federal, state aod local statutes. regulations, ordinances and administrative rules and orders (that have the effect of **law**) as well as all applicable final, non-appealable judicial opinions.

(J)  "Community Association **Dues,** Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or lhe Property by a coadomioium association. homeowners association or similar organization.

**(K)  "Electronic Funds** Transfer" means any transfer of fonds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrnment. computer. or magnetic tape so as to order, instruct. or authorize a financial institution to debit or credit -0-11 nccount. Such term includes, but is not limited to, point-of-sale transfers., automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L)  "Escrow Items" means those items that are described in Section J.

(M)  "Miscellaneous**Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destrnction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N)  **"Mortgagelnsurance"** means insurance protecting Leoder against the nonpayment of, or default on. the Loan.

(0)  "PeriodicPayment" means the r ularly scheduled amount due for (i) principal and interest under thi, Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P)  "RESPA"means the Real Estate Settlement Procedures Act ()2 U.S.C. Section260I et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time. or any additional or successor legislation or regulation that governs the same subject matter. As used io this Security Instrument, "RESPAn refers t.o all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mort e loan" under RESPA._____          _____

FI-111. Mons•9" VV lr lAE  ennsyl•ania
l:ia• er, Sy t•MS"'  VMP8
'Nolt.el">J0.,.,:,, l";nancial Servic&

VMP NIP/\) (1603) 00
**P.,ge** 3 cl20
9/30!2014

(Q)   "Secretary" meaos the Secretary of the United States Department of Housing and Urban Development or his designee.

**(R)**   "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument

### TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan. and all renewals, extensions and modifications of the Note; and (ii) the perfonnance of Borrower's covenants aod agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and e-0nvey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the

County                          of                          Phil ade1phi a
{Type of Recording Jurisdiction)                          (Name of Recording Juri.uliction)

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.
SUBJECT TO COVENANTS OF RECORD.

which curreotly bas the address of
3121 Holly Rd                                                            (Su·eet)
          Philadelphia                    (City). Pennsylvania 19154-1707 (Zip Code)
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the prope.rty. and all easements. appurtenances. and fixtllres now or hereafter a part oftbe property. All replac.ements and additions shall also be covered by Ibis Security Instrument. All of the foregoing is referred to **io** this Security Instrument as the "Property." Borrower uoderstaods and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) bas the right: lo exercise any or all of those interests. including. but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrumenl

---

i1-1.0. Mor\g Wlii, MERS-Pennsylvania
Ban •,... li!'5WITI ,...  VMP                                            14
Wo ....... l(JU™V Fin,-,"cial Se,vion                                   VMP4N(PA) (1603) 00
                                                                        Page 4 of20





BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby e-0nveyed and has the right to mortgage, g.-aat and convey the Property aod tbat the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to tb.e Property against all claims and demands, subject to any encumbrances of record.

THTS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations *by* jurisdiction to constitute a uniform security instrument covering real pr-0perty.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1.  **Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal o  alld iuterest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under tlte Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Leader unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following form asselected by Lender: (a) cash; (b) money order; (c) certified check. bank check, treasurer's che(.:k or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or e1ttity; or (d) Electronic Funds Transfer.

    Payments are deemed received by Lender when received at the location designated io the Note or at such other loc-ation as may be designated by Lender io accordaoce with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments io the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applie-d as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan curreot. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balaoce under the Note immediately prior to foreclosure. No l)ffset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreemeots ure-d by this Security Instrument.

2_  Applicationof **Payments** or Proceeds. Except as expressly stated otherwise in this Security Instrument or the Note, all payments accepted and applied by Lender shall be applied in the following order of priority:

    First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the  retary iru.'1ea<l of the monthly mortgage iasurance premiums;



•'r'- Mono"fi41 Wnh MERS MSylvanla
8ae e•t S r.,em&™ VMP 8
Woh"'" I\"'w•r ;=l,...ncla | Servicos

30/201-'
VMP4N(PA) (1603)00
Page 6of20



Second. to any taxes. special assessments. leasehold payments or ground rents, and fire. flood and orher hazard insurance premiums. as required;

Third. to inlerest due under the Note;

Fourth. to amortization of the principal of the Note; and,

Fitlh. to late d1arges due under the Note.

Any application of payments, insurance pr eeds, or Miscellaneous Proceeds to princ-ipal due under the Nole shall not extend or postpone the due date, or change the amount. of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payme11ts are due under rhc Note. until the Note is paid in t\111, a sum (the Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan. Lender may require that Community Association Dues, Fees. and Assessments. if any, be escrowed by Borrower, and such dues, fees and assessments shall be an E row Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. ln the event of such waiver. Borrower shall pay directly, when and where payable. the amounts due for any Escrow Items for which payment of fonds has been waived by Lender and, if Lender requires, shall furnish lo Lender receipts evidencing such payment within such time period .is Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purpos;s be deemed to be a covenant and agreemenl contained in this Security Instrument. as the phrase covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver. and Borrower fails to pay the amonnt due for an Escrow Hern. Lender may exercise its rights under Section 9 and pay such amount aad Rcmower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow [terns at any rime by a notice given in accordance with Section 14 and, upon such revocation. Borrower shall pay to Lender all funds. and in such amounts, that are then required under this Section 3.

Lender may, *at* any time. collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA- Lender shall estimate **the** amount of Funds due on the basis of current data and reasonable estimates of expenditures of future E row [terns or otherwise in accordance with Applicable Law.

FHA M""9'!!" W• I.IERS-0..nnsytlvania
BMlf♦•AS -:11,m,.. V,;,P.;)
Wotterili Kli.."l'--r Ftl"laMal Sel'-eces

9/J012(114
Vl.1P4N(PA) I •603▶ 00
Pai-! **S** of 20



The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality. or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Fuods lo pay the ESCTow Items no later than the time specified undi.:r RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items. unless Lender pays Borrower interest on fhe Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interesl robe paid on the Funds. Lender shall not be req\lired lo pay Borrower any incerest or earnings on rhe Funds. Borrower and Lender c.in agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower. without ch:uge. an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held inrow, as defined uoder RESPA. Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage io accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA. Lender sh:ill notify Borrower as required by RESPA, and Borrower shall pay to Lender the :imounl necessary to make up the deficiency in accordance with RESPA. but in no more than 12 monthly payments.

Upon paym(;nl io full of all smns secured by this Security lostrument, Lender shall pro1nptly refund to B01Tower any f-unds held by Lender.

4.   Charges;Liens.Borrowcr shall pay all taxes. assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property. if any. and Community Association Dues, Fees, and Assessments. ifaoy. To th.e extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly di harge any lien which has priority over this Security Instrument uoless Borrower: (a) agrees in writing to rhe payment of the obligation secured by tile lien in a manner acceptable to Lender. but ooly so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the liea in, legal proceedings which in Leoder's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are conclnded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying rhe lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

5.   **Property** Insurance.Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including. but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maincained in the amounts (including deductible levels) and for the periods that



Lender requires. What Lender requires pursuant to the precedi.ng sentences can change during the term of the Loan. The insurance carrier providing the insurance shall l>e chosen by Borrower subject to Lender's right to disapprove Borrower's choice. which right shall not be exercised \lnreasonably. Lender may require Borrower to poy. in connection with this Loan. either: (a) a one-time charge for flood zone determination. certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtaio iusurauce coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of e-0verage, Therefore, such coverage shall cover Lender. but might or might not protect Borrower. Borrower's equity in the Property, or the contents of the Property. against aoy risk. hazard or liability aod might provide greater or lesser coverage than was previously in effect Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the co:;t of in:;urance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by th.is Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable. with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender arid renewals of such policies shall be subject to Lender's right to dis.ipprove such policies. shall include a standard mortgage clause. and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal cenificates. If Lender requires. Borrower shall promptly give to Lender all receipts of paid premiums and renewal not ices. If Borrower obtains any form of insurance coverage. not otherwise required by Lender. for damage to. or destmetion of. the Property. such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

Tn the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of lo$$ if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing. any insurance proceeds. whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically fcasibk. and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid 011 such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings ou such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of

FH.... .,.or..g Wilh MERS.Pennsyl.,.nie
ii•rl<.•-., Syslem•"' VMP r.l>
WolWG Kl•wer """06l ServlcH

9/30/2014
VIlll> ◄N(PA) (1M3) 00
Page8of 20

Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insuran<:e proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Rorrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if under acquires the Property under Section 22 or otheiwise, Borrower hereby assigns to Lender (a) Borrower's rights to aoy insurance proceeds in an amount not to exceed the amounts unpaid **under** the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid uod the Note or this Security Instrument, whether or not then due.

6.  Occupancy.Borrower shall occupy. establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue 10 occupy the Property as Borrower's principal residence for at lea.st one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Bom:,wcr's ,control.

7.  **Preservation, Malntenance and Protection of the Property;** Inspections.Borrower shall not destroy, damage or impair the Property. aUow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless **it** is determined pursuant to Section *5* that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or C-Ondemnation proceeds are paid in connection with damage to the Property, Borrower shall lx: responsible for repairing or restoring the Property only if Lender bas released proceeds for such pwposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property. Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in coonection with the taking of the property, Leoder shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Ally application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable enkies upon and inspections of the Property. If it bas reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an intaior inspection specifying such reasonable cause.

!'HA. r,lcngage W h MERS•Pe ylw.,,.,ia
Blllk9"S sy,iemat.o  \IMP ®
Wok,s Klu.,.,, Flnllnclal So,vic:.s

14
VMP4N(PA) ◄ 1603).00
Pao,eto/20



8. **Borrower's** Loan Application. Borrower shall be in default if, during the Loao application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or cooscnr gave materially false. misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If** (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceediog that might significantly affect Lender's interest in the Property and/or rights under this Se<:urity Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture. for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower bas abandoned the Property. then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or **ing** the value oftbe Property, and securing and/or repairing the Property. Lender's actions can include, but arc not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secure.d position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Propeny to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions. and have utilities turned on or off. Although Lender may **truce** action under this Section 9, Lender does not have to do so aod is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized uoder this Sectioo 9.

Any amounts disbursed by Leoder uoder this Section 9 shall become additiooal debt of Borrower secured by this Security Instmment. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Asslgnment of Miscellaneous Proc s; Forfelture. All** Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged. such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair aod restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction. provided that such insp tion shall be undertaken promptly. Lender

H.A"""''- W h MERS-Pennsylven.i
B...t.i..; Syllt.mt™ VMP
WDi.,r., Hluwet **Financial** Services

9/30(201-4
VMP•M(PA) (1603).00
Pag411)cf20



may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrmwer any interest or earnings on such Miscellaneous Proceeds. Tfthe restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if **any,** paid to Borrower. Such iscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or oot th.en due. with the excess, if any. paid to Borrower.

lo the event of a partial taking, destruction, or loss in val11e of the Property in which tb.e fair markel value of the Property immediately before the partial taking. destruction, or loss i.n value is equal 10 or greater than the amount of the sums secured by lhis Security Tnstrume11t immediately before the partial laking. destruction. or loss in value. unless Borrower and Lender otherwise agree in writing, the sums secured by this Security lnstrnme11t shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking. destruction. от loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property io which the fair market value of the Property immediately before the partial taking. destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking. destruction., or loss in value, unless Borrower and Lender otherwise agree io writing, the Miscellaneous Proceeds shall be applied to lhc sums secured by this Security Instrument whether or n.ot the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Bocrower th.at the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages. Borrower fails to respond to Leoder within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration от repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proc ding, whether civil or criminal, is begun that, in Lender's judgment. could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under lhis Security Instrument Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeitul'e of the Property or olher material impairment of Lender's interest in the Property от rights under this Security Tnstn1ment. The oroceeds of

FH-. lit0ttg• W  hMERS.Pennsylvaoia
Ba,. el& sy,10m,...   VMP  tI>
Vlloh™  llJuwer Flr,,,ncial Sen,ioes

9^30(2014
VMP4N(PA) (11503).00
Page 11 ol 20



any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Leoder.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security lostn1ment granted by Lender to Borrower or any Successor it1 Interest of Borrower sh.all not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to ext.end time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Cnterest of Borrower. Any forbearance by Lender in exercising any right or remedy including. without limitation. Lender's acceptance of payments from third persons. entities or Successors in Interest of Borrower or in amounts less than the amount then due. sh.all not be a waiwr of or preclude the exercise of any right or remedy.

12. Joint and Several Liablllty; Co-slgners; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability sh.all be joint and several. However. any Borrower who co-signs this Security Instrument but does oot execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instmment; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Leoder and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Se,;urity Instrument in writing. and is approved by **Lender,** shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument 11oless **Lender** agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) a1ld benefit the successors and assigns of **Lender.**

13. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security lru;trument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that arc expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subje(t to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits. then: (a) any such loan charge shall be reduced by the amount necessary to reduce the

FH''-1.1orlgage Wrlh MERS-Pennsylvania
9anke!'5 Sy... ms''' VMP8
\-Voltllf''S Kluwer Financial Servi

9/30/2014
VMP4N(PA) (1503) 00
p-    12of20

charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by malcing a direct payment to Borrower. If a refund reduces principal, the reduction will be treated os a partial prepayment with no changes in the due date or in th.e monthly payment amount unless the Lender agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's ootice address if sent by other means. Notice to auy one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly req11ires otherwise. The notice address shall be the Property Address 11nless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one ti.me. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender bas designated another address by notice to Borrower. Any notice in connection with this Security lnstniment shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law. the Applicable Law requirement will satisfy the correspoodiog requirement under this SC\:urity Instrument.

**15. Governinglaw; Severabillty;Rulesof Construction.This** Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property i.s located. All rights aod obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law, Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might. be silent. but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this SCCllrity Instrument or the Note conflicts wilh Applicable Law, Sllch conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without Uie contlicting provision.

As used in this Security Instrument: (a) words of the masculine gender sltall mean and include ..:om: onding oeuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Bonower shall be given one copy of the Note and of this Security Instrument.

HA M""fBage Wllh MERS.Penn )'1',ania
**Bankers** SyattffiSTll VMP@)
Wollen, Khiwer F!r.ioci.l S......,t.es

9/3012014
VWF4MIPA) (1803).00
Pag., 13 oi 20



17. **Transfer** of the Property or a Beneflciallnterest in Borrower. *A$* used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property. including, but not limited to, those beneficial interests transferred iu a bond for deed, contract for deed. installment sales contract or escrow agreement. the intent of which is the transfer of title by Borrower at a future date lo a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Jnstrumcnt. However. this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower mus1 pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. Borrower's **Rightto Reinstate After** Acceleration.If Borrower meets certain conditions. Borrower sb.all have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument., including. but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Iustrumeot, and Borrower's obligation to pay the sums secured by this Security Iostrument. shall continue unchanged. However. Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within. two years immediately preceding the commencement of a current foreclosure proceeding; (ii) reinstatement will preclude foreclosure on different grounds in the future; or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following fonns, as selected by Lender: (a) cash; (b) money order, (c) certified check. bank check, treasurer's check or cashier's ch.eek, provided any such check is drawn upon an institution whose deposits are insured by a **federal** agency, instrumentality or entity; or (d) Electronic Funds Trc1nsfer. Upon reinstatement by Borrower. this Security Jnstrument and obligations secured hereby shall remain fully effective as if no acceleration had occUJTed. However, this **right** to reinstate shall not ap])IY in. the case of acceleration under Section 17.

19. **Sale of Note; Changeof LoanServicer; Not;ce of Grievance.**The Note or a partial interest in the Note (togethet with d1is Security Instrument) can be sold one or more times without prior ootice to Borrow r. A sale might result in a change in the entity (known as the "Loan Servicer") that collects

F>jA /lollllî!"? Wll!1MERS.P.nn>ylvania
& "°"" Sf•tem,"' VMP ®
1\1141"1.;( ar1InM1cial Snvk:




9(3()/2014
\!!AP4N(PA) (1603) 00
Page 140/ 20

Periodic Payment.s due under th;; Note and this Security Instrument aod performs other mortgage loan servicing obligations under the Note. this &:curity Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of lhc Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the addrtss to which payments should be made and any other information RESPA requires in conne(:tion with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain wit.h the Loan Servicer or be transferred to a successor Loan Servicer and arc not assumoo by the Note purchaser unless otheiwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial actiou (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that. alleges that the other party has breached any provision of, or any duty owed by reason of. this Security Iostrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provid s a time period which must e1a before certain action can be taken, that time period will be deemed to be reasonable for purposes of this Section. The ootice of acceleration and opportunity to c,1re given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemoo to satisfy the notice and opportunity to take corrective action provisions of this Secti(.m 19.

20. **Borrower Not Thlrd-PartyBeneficiaryto Contract of** Insurance.Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain lo        it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is nor a third party beneficiary to the contract of insurance between the Secretary and Lender. nor is Borrower entitled t.o enforce any agreement between Lender and the Secretary. unless explicitly authorized to do so by Applicable Law.

21. **Hazardous Substances.As** used io this Section 21: (a) "Hazardous Substances" are those substances defme-d as toxic or hazardous substances, pollutants. or wastes by Environmental Law and the following substances: gasoline, kerosene. other flammable or toxic petroleum products. toxic pesticides aud herbi ides, volatile solvents, materials containing asbestos or formaldehyde. and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located rhat relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action. remedial action, or removal action., as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Eovironmcnlal Cleanup_

Borrower shall not cause or permit the presence. use, disposal. storage, or release of any Hazardous Subsronces, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do. anything affecting the Property (a) that is in violation of any



f't-i.. 1,4011'-"Sc VI/ill, MERS-f...,r,sy"8ria
11...,a S-,t-1™ VMP<9
Woi ... Klu-,Flftenclel Se,,,ices

9/J0/2014
VMP4N(Pll) (1603).00
**Page** 15ot20




Environmental Law. (b) which creates an Environmetttal Condition, or (c) which, due to the presence, use. or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, u , or storage on the Property of small quantities of Hazardous Substances that are generally recognized lo be appropriate to normal residential u es and to maintenance of the Property (including, but not limited to. hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim. demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental L-aw of which Borrower has actual knowledge, (b) any Environmental Condition.. including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance. and (c) any condition caused by the preseoce. use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns. or is notified by any governmental or regulat0ry authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance w,th Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration;Remedles.Leoder shall give** notice to Borrower prior **tu acceleration following** Borrower's breach of any covenant or agreement in this Security Iostrumeot (but not prior to acceleration under Section 17 uoless AppUCAble Law provides otherwise). Lender shaU notify Borrower of, among other thlogs: (a) *the* default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that faJlure to cure the default as specified may result in acceleration of the sums secured by thts Security Instrument. foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence ofa default er any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender sbal1 be entitled to collect all expenses incurred in pursuing the remedies provided In this Section 22, includinz:, but not limited to, reasonable attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.

23. **Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall tenninate and become void. After such occurrence. Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordatioo costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

A """'l_gage WeiI.4ERS.'fennsyl•a·i&
S.••ars iI", 111118...  VMP i&
W<> er,; I(J..,F;... nc,at S.rviCH

9/30/201A
VMP N(PA) (1503).00
Page1&ol20

24. **Waivers.** Borrower, to the extent pennitted by Applicable Law, waives and releases any error or defects in proceedings to enforce thls Security Instrument. and hereby waives the benefit of any present or future laws providing for stay of cxocution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

25. **ReInstatementPeriod.** Borrower's time to reinstate provided in Se-:tion 18 shall **extend** to one hour prior to the commencement of bidding at a sheriffs sale or other sale pursuant to this Security Instrument.

26. PurchaseMoney **Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, tllis Security Instrument shall be a purchase money mortgage.

27. Effect of Survival **Events.** Both before and after any Survival Event, as defmed below, Borrower shall:

(A)   pay Funds for Escrow Items or pay Escrow Items directly as provided in Section 3 of this Security Instrument;

(B)   pay the amounts and take the: actions required by Section 4 of this Security Instrument;

(C)   maintain insurance coverages and taJce the other actioas required by Section 5 of this Security Instrument;

(D)   maintain. repair and restore the Property and take the other actions required by tion 7 of this Security Instrument;

(E)   if this Security Instrument is on a leasehold, comply with all the provisions of the lease;

(f)   treat any amounts disbursed by Lender under Section 9 of this Security Instrument as additional debt of Borrower secured by this Security Iostrument;

(G)   maintain and pay the premiums for Mortgage Insurance. or make payments to Lender if Mortgage Insurance coverage is not available. and take the other actions **required** by Section 3 of this Security loslrument

(Hl   pennit the collectioo and application of miscellaneous proceeds as required by Section 10 of this Security Instrument;

(I)   pay the fees required by Section 13 of this Security Instrument;

(J)   continue to abide by the restrictions and take the actions required by Section 21 of this Security Instrument;

{]()   pay any collection expenses under Section 22 of this Security Instrument; aod

(L)   pay interest at the rate payable from time to time under the Note.

FHA t.lcr-,gag,,, With IA RS'.f'ennsylvani■
Bani<•• S ■*"" VMP  8
W-      !<Il._.. Fn''lll'ciol Sel\iel'S

913012)14
VMP4N(PA) (1eo3)00
**Page** 17 ol 20



"Survival Event" means any of the following:

(A) a11y default described in the Note;

(8)  Lender requiring Borrower to pay immediately the full amount of Principal which has not been
     paid an<l all the interest that &mower owes on that amount under the Note;

(C)  Lender requiring immediate payment in full of all sums secured by this Security Instrument as
     described in the Note and Sections 17 and 22 of this Security Instrument;

(D)  the Maturity Date as defined in the Note;

(E)  the entry of any judgment against Borrower under the Note; and

(F)  the entry of any judgment under this Security Lnstrument

28. **Attorneys'** Fees. As used in this Security Instn11nent and the Note, attorneys' fees shall include those
    awarded by an appellate collrt and any attorneys' fees incurred in a bankruptcy proceeding.

29. **Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action. proceeding,
    claim, or counterclaim. whether in contract or tort, at law or in equity. arising out of or in any way
    rel::ited to this Security Instrument or the Note.



BY SIGNING BELOW, Borrower accepts and agrees to the te    and covenants contained io this Security
Instrumeot and io any Rider executed by Borrower aod recorded with it.

_???_

William Sullivan Jr                    03109!2017_    *(Seal)*
                                              **-Borrower**

Angetariie Hagey                       03/09/2017_ *(SeaQ*
                                              **-Borrower**

_____        *(Seal)*
                                              **-Borrower**

_____        *(SeaQ*
                                              **-Borrower**

D  Refer to the: attached *Signature Addendum* for additional parties ao<l signatures.

FI-IA Mo  - W-ll1] MERS•P▪mn5ýi.,,nia                                        9/30/2014
Bankers Sy..,ms™  VMP                                                VMNN(PA)/180:\) 00
Wolters KluwH Financial Seriice•                                        **Page** 19o120



**Acknowledgment**

State of Pennsylvania

Count)· of Philadelphia

On      March 9, 2017   . before me.

1he undersigned officer, personally appeared William Sullivan Jr. a single man and Angela Marie Hagey, a single woman

known to me, (or satisfactorily proven) to be the person whose name(s) is/are s\1bscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes therein contained.

ln witness whereof I hereunto set my band and official seal.

*f* '(/{  ttfL,u/

*Notary Public*

> COMMONWEALTHOFPBNNSYLVANIA
> OTAR.JAL  SEAL
> **Karen M** Hudnell, Notary Public
> Penndel  Boro, Bucks County
> My commission c::pircs October 22, 202'1

*My commi.uion e:,;pire.r:*

**Certificate *e,t* Residence**

I,      _I( ?/v :i_ _i_ _it I_ _I_                 . do hereby certify that the correct address of the within-named Lender is  1050 Woodward Ave. . Detroit. MI 48226.

w;1ness my:••th,;, _:sz:_ of fYI_tueA Jot}_

*f* c)ll.CU

*Agent of Lender*

**Loan Ori n OrganizatiorGui**cken  Loans  Inc.

**NMLSID:-**

**Loan Ori-i11i am Lemon**

**NMLS ID:**

F A MMgage Wlh MERS-Pennsytvania
e.-.,,. Sysiems"' VMP ®
W<>·if>r, Kluw<,r F·IMneial Services

9/30/2014
VI,IP-4N(PA)( 11503),00
Page 20of20

Receipt#:
Records epa men Doc Code: 

Pa,cel Number: ▮▮▮▮▮▮
Premises: 3121 Holly Rd Philadelphia PA, 19154
Recording Requested By」Return To:

Final Docs Tearn
1050 Woodward Ave.
Detroit, MI 48226

This Instrument Prepared By:
Akshdeep Dhaliwal
Quicken Loans Inc.
1050 Woodward Ave.
Dclroit. MI 48226
Tel. **No.:** (313) 373•0015

# Assignment of Mortgage

FOR VALUE RECEIVED, Mort.gage Electronic Registration Systems, Inc. CMERS") as nominee for
QUICKEN LOANS INC. whose address is 1901 E. Voorhees Street, Suite C, Danville, IL 61834; P.O. Box
2026, Flint, MI 48501-2026 its successors and assigns, does hereby grant, assign, transfer and convey, unto
Quicken Loans Inc.

, a corporation
organized and existing under 1he Jaws of the state of Michigan          (herein "AssigneeN). whose
address is 1050 Woodward Ave. Detroit, MI 48226

, its successors
and assigns, all its right, title and interest in and to a cenain Mongage dated          March 9, 2017
made and e11.ecuted by
WII.LI/\MSULLrV/\N JR. A SINGLtMJ\N AND ANGELA MARIE flAGEY, A SINGLE WOMAN

whose address is 3121 Holly Rd Philadelphia PA, 19154

to and in favor of Mortgage Electronic Registration Systems, Inc (-M ERS") as a nominee for QUICKEN
LOANS INC. its successors and assigns          upon the
following described propeny situated in PHILADELPHIA          County, State
of Pennsylvania

SEE EXHIBIT •A" ATTACHED HERETO AND MADE A
PART HEREOF SUBJECT TO COVENANTS OF RECORD.

T )( Parcel#-

Mortgage Recorded On: 0311S12017          8-0ok/Liberll:

Document Number: 53187046          ＃＃

**MIN:** ▮▮▮▮▮▮          MERS Phone:

MERS A.. l9M-OBl of Morrgage
VLIP\\¼
Wol1<1s Kh,we, F-,ancíal Servicee @2000. 2011          VMP96M (1 104100
P • 1 oJ3

such Mongage having been given to secure payment of
One Hundred Seventy Six Thousand Six Hundred Forty One Dollars and 00/100

       ($ 176,641.00    ) (Include the Original Principal Amount) which Mortgage is of record
in Bouk. Volume, or Liber N\J.        • ,ll page        (or as No.
53 J 87046        ) of the        Records of
                PHILADELPHIA  County, Stale of
      P'enus.ylv<1nia        and all rights accmed or to accrue under such Mortgage.

    TO HAVE AND TO HOLD, the same unlo Assignee, its successors and assigns, forever, subject only to
the-terms and conditions of the above-de cribed Mortgage.

    '--· iN \VITNESS WHEREOF, the undersigned Assignor has cllccuted this Assignment of Mortgage on
    Ju1y"l9t\2018

Witness Pamela Alford

Witness Donnella Smith

.-\rttl t

Mortgage Etc· • nic Reg;stration Systems, rue.
("l\1ERS") . m>n inee for
QUICKEN  OANS NC,  its successors and assigns

Uy: _ _ _ _ _ _i_ _ _ _ _ : : i_ _ _ _ _ _ _ _ _ _ _ _ _ _
                           (Signarure)

:-1:uue:Joanna  Emler
Title:  Assistant Secretary of MERS

<:.:ital(' of  Jichig:m

C'O:\llllty of  W:tyne-

O1107/19/2018 . beforr!nlt Shamara Phillips    . a Not:try Public of Michigan. personally appeared
Joanna Emler        .-h t5l,mt  cc:iC"tary ClfMortgag(' El('ctrouu: Regi-.-.lnnon Sy.-.tem . Inc. pelT,on:illy known
to me {vt  prnwd ro me 011 tht" lw,i.s of  ali'>factorY e\·idt.-nce) to be the person(s) whose- 11:itn s) k' re
    ubr;cnb d 10 withw. imlllJJllent .:md acknowledged  to me th:it he--·c;he'tl1ey exernrtd the- sa111e  in his: 11er⎮rhrir
    ;111tllorized  cap:icuy{ies). and th.11 by bwher 'chetr •!!!11:lrure(<;) on ,he i.11,111.unem. Jht" p .,,on{5). or the entity
upon behalf of which rhe per<;otll s) acred. executed rhe in'>m101 1t.

\\'11":\.1:SS my h::md :rnd official se:11.        *mtZl f:d-* £

:une: Shamara Phillips

I 1tlL-'Notary P\lblic

SHAMARAA. PHILLIPS
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF WAYNE
My Commission Expires September  15, 2024
Aeting in lhe *County* of  n    e

t,-iHIS  A:,,s19nu,cn1or  Mu,loagc
V"1f  @9
Wolto-r$ Klu1."•lt Flnn.,c,al S rviceti  ,:,  2000. 2011

VMP9 1\f11 1041.00
Po90 2 or :l

Assignment of Mortgage

Between:

Mortgage Electronic Registration Systems, Inc. ("MERS")

And QUICKEN LOANS INC.

Quicken Loans Inc.

Mail To:    Final Docs Team

   Quicken Loans Inc.

   1050 Woodward Ave.

   Detroit. MI 48226

Certificate of Residence

I, Joanna Emler                    do hereby certify that ASSIGNEE'S precise residence is
1050 Woodward Ave. Detroit, MI 48226.

Witness my hand on July 19th, 2018

ASSIGNEE or Agent for ASSIGNEE



File No. ███████████     Commitment No. ████████████

### LEGAL DESCRIPTION

ALL THAT CERTAIN land and premises, Situate in the 66th **Ward** of the City of Philadelphia and State of Pennsylvania.

BEGINNING at a point In the Northeasterly curved line of Holly Road distance 201.90 feet Southeastwardly measured along the tangent and curved Northeasterly line of Holly Road from the Southeasterly end of the curve connecting the Northeasterly line of Holly Road with the Southeasterly line of Sweet-Briar Road said connecting curve having a radius of 15 feet, said beginning point also being in the extended middle line of party wall between premises herein described and premises adjoining on the Northwest; thence Southwestwardly along the curved Northeasterly line of Holly Road curving to the left with a radius of n2.87 feet an arc distance of 18.03 feet to a point in the extended middle line of party wall between premises herein described and premises adjoining on the Southeast; thence North 37 degrees 38 minutes 54 seconds East through the middle line of last mentioned party wall and the extensions thereof 157.77 feet to a point; thence Northwestwardly along a curve, curving to the right, with a radius of 575.37 feet an arc distance of 18.04 feet to the extended middle line of the first mentioned party wall; thence South 37 degrees 38 minutes 54 seconds West through the middle line of said party wall and the extensions thereof 157.57 feet to the pface of beginning.

BEING Lot No. 126 as shown on Rambler Park Plan of Lots for the Mack Building Co., by William Spencer Erwin, Civil Engineer dated the 19th day of January A.O. 1959, Revised the lrd day of February **A.O.** 1959.

TOGETHER with and subject to the free use in common with adjoining owners, tenants and occupiers on the Northwest in and to the Common Driveway between premises herein described and premises adjoining on the Northwest and the common walkway between premises herein described and premises adjoining on the Southeast.

BEING known as No. 3121 Holly Road.

Of>ANO. ████████████

BEING the same premises which John W. Wliey, Jr., by Deed dated 10/14/2005 and recorded 10/27/2005 In the Office of the Recorder of Deeds In and for the County of Phfladelphla In Document No. 51301128, granted and conveyed unto Michele A. Morgan.

AI TA Commilment (6/17106)
Schedule A *(continued)*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:  William E. Sullivan Jr. | CHAPTER 13 |
| Debtor(s) | |
| Rocket Mortgage, LLC f/k/a Quicken Loans, LLC f/k/a Quicken Loans Inc. | |
| Movant | |
| vs. | NO. 23-12347 AMC |
| William E. Sullivan Jr. | |
| Debtor(s) | |
| KENNETH E. WEST ESQUIRE | 11 U.S.C. Section 362 |
| Trustee | |

## CERTIFICATE OF SERVICE

I, Denise Carlon, Esq., attorney for Movant, do hereby certify that I caused true and correct copies of the foregoing Motion of Rocket Mortgage, LLC f/k/a Quicken Loans, LLC f/k/a Quicken Loans Inc. for Relief From Automatic Stay and NOTICE OF MOTION, RESPONSE DEADLINE AND HEARING DATE to be served on November 15, 2024 by first class mail, and/or electronic means upon those listed below:

Debtor(s)
William E. Sullivan Jr.
3121 HollyRoad
Philadelphia, PA 19154

Attorney for Debtor(s)
SHARON S. MASTERS, ESQUIRE
132 OverleafDrive
Thorndale, PA 19372
**VIAECF**

Trustee
KENNETH E. WEST ESQUIRE
830 Lansdowne Avenue (VIA ECF)
Drexel Hill, PA 19026
**VIAECF**

Office of the US Trustee
United States Trustee
Office of the U.S. Trustee Robert N.C. Nix
Federal Building
900 Market Street Suite 320
Philadelphia, PA 19107

Date: November 15, 2024

/s/ Denise Carlon
Denise Carlon, Esquire
KML Law Group, P.C.
701 Market Street, Suite 5000
Philadelphia, PA 19106-1532
Phone: (215) 627-1322 Fax: (215) 627-7734
Attorneys for Movant/Applicant

**File a Notice:**

[23-12347-amc William E. Sullivan, Jr.](23-12347-amc)

| | | |
|---|---|---|
| Type: bk | Chapter: 13 v | Office: 2 (Philadelphia) |
| Assets: y | Judge: amc | Case Flag: Repeat-PAEB, RepeatPACER |

<div align="center">

**U.S. Bankruptcy Court**

**Eastern District of Pennsylvania**

</div>

Notice of Electronic Filing

The following transaction was received from DENISE ELIZABETH CARLON entered on 11/15/2024 at 11:06 AM EST and filed on 11/15/2024

**Case Name:**  William E. Sullivan, Jr.
**Case Number:**  [23-12347-amc](23-12347-amc)
**Document Number:** [66](66)

**Docket Text:**
Notice of (related document(s): [65] Motion for Relief from Stay *re: 3121 Holly Road, Philadelphia, PA, 19154.* Fee Amount $199.00,) Filed by Rocket Mortgage, LLC f/k/a Quicken Loans, LLC f/k/a Quicken Loans Inc.. Hearing scheduled 12/10/2024 at 11:00 AM at Courtroom #4. (Attachments:# (1) Service List) (CARLON, DENISE)

The following document(s) are associated with this transaction:

**Document description:Main** Document
**Original filename:Sullivan** NOH.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=l008166204 [Date=ll/15/2024] [FileNumber=32359478 -0] [555f07be4a8b3fla582e8645fff35bc66ff14d624b5516ff496d5e409806c4f2f ef79602b56476ba9882909d04c29633f6186b37ee42b97eed9a93fe978e73ad]]
**Document description:Service** List
**Original** filename:C:\fakepath\Sullivan COS.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=l 1/15/2024] [FileNumber=32359478 -1] [5c3fc942ld943194a70276b694a49a35dd8de5ef3adel84e8fdc53c38e3ea097c ebe87f85a0d237394055ab20e2962aa030bb8650579d9c7c6435de208948409]]

**23-12347-amc Notice will be electronically mailed to:**

DENISE ELIZABETH CARLON on behalf of Creditor Rocket Mortgage, LLC f/k/a Quicken Loans, LLC f/k/a Quicken Loans Inc.
bkgroup@kmllawgroup.com

SHARON S. MASTERS on behalf of Debtor William E. Sullivan, Jr.
shmasters@hotmail.com, G65312@notify.cincompass.com

United States Trustee
USTPRegion03.PH.ECF@usdoj.gov

KENNETH E. WEST
ecfemails@ph13trustee.com, philaecf@gmail.com

KENNETH E. WEST on behalf of Trustee KENNETH E. WEST
ecfemails@ph l 3trustee.com,  philaecf@gmail.com

**23-12347-amc  Notice will not be electronically mailed to:**

Atlas Acquisitions LLC
492C Cedar Lane, Ste 442
Teaneck, NJ 07666

Quantum3 Group LLC as agent for
Sadino Funding LLC
PO Box 788
Kirkland,  WA 98083-0788

**LOCAL BANKRUPTCY FORM 9014-3**
**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE:  William E. Sullivan Jr. | CHAPTER 13 |
| Debtor(s) | |
| Rocket Mortgage, LLC f/k/a Quicken Loans, LLC f/k/a Quicken Loans Inc. | |
| Movant | |
| vs. | NO. 23-12347 AMC |
| William E. Sullivan Jr. | |
| Debtor(s) | |
| KENNETH E. WEST ESQUIRE | 11 U.S.C. Section 362 |
| Trustee | |

<u>**NOTICE OF MOTION, RESPONSE DEADLINE**</u>
<u>**AND HEARING DATE**</u>

Rocket Mortgage, LLC f/k/a Quicken Loans, LLC f/k/a Quicken Loans Inc. has filed a Motion for Relief from Stay, with the court for Relief from the Automatic Stay of Section 362.

<u>**Your rights may be affected**</u>.  **You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.  (If  you do not have an attorney, you may wish to consult an attorney.)**

1.        If you do not want the court to grant the relief sought in the motion, then on or before **November <u>29, 2024</u>** you or your attorney must do <u>all</u> of the following:
         (a)       file an answer explaining your position at:
                    United States Bankruptcy Court
                     Robert N.C. Nix Building
                    900 Market Street, Suite 400
                    Philadelphia, PA  19107-4299

If you mail your answer to the bankruptcy clerk's office for filing, you must mail it early enough so that it will be received on or before the date stated above; and
         (b)       mail a copy to movant's attorney:
                    Bankruptcy Group
                    KML Law Group, P.C.
                    Suite 5000 - BNY Mellon Independence Center
                    701 Market Street
                    Philadelphia, PA 19106-1532

2.        If you or your attorney do not take the steps described in paragraphs l(a) and l(b) above and attend the hearing,  the court may enter an order granting the relief requested in the motion.

3.        A hearing on the motion is scheduled to be held before the Honorable Ashely M. Chan, the United States Bankruptcy Judge, in Courtroom 4 at the United States Bankruptcy Court, Robert N.C. Nix Building, 900 Market Street, Suite 400, Philadelphia, Pa. 19107-4299 on  <u>**December 10, 2024, at 11am,**</u> or as soon thereafter as counsel can be heard, to consider the motion.

4.      If a copy of the motion is not enclosed, a copy of the motion will be provided to you if you request a copy from the attorney named in paragraph l(b).

5.      You may contact the Bankruptcy Clerk's office at 215-408-2800 to find out whether the hearing has been canceled because no one filed an answer.

/s/ Denise Carlon
Denise Carlon, Esquire
KML Law Group, P.C.
701 Market Street, Suite 5000
Philadelphia, PA 19106-1532
Phone: (215) 627-1322 Fax: (215) 627-7734
Attorneys for Movant/Applicant

November 15, 2024

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:  William E. Sullivan Jr. | CHAPTER 13 |
| Debtor(s) | |
| | |
| Rocket Mortgage, LLC f/k/a Quicken Loans, LLC f/k/a Quicken Loans Inc. | |
| Movant | |
| vs. | NO. 23-12347 AMC |
| | |
| William E. Sullivan Jr. | |
| Debtor(s) | |
| | |
| KENNETH E. WEST ESQUIRE | 11 U.S.C. Section 362 |
| Trustee | |

## CERTIFICATE  OF SERVICE

I, Denise Carlon, Esq., attorney for Movant, do hereby certify that I caused true and correct copies of the foregoing Motion of Rocket Mortgage, LLC f/k/a Quicken Loans, LLC f/k/a Quicken Loans Inc. for Relief From Automatic Stay and NOTICE OF MOTION, RESPONSE DEADLINE AND HEARING DATE to be served on November 15, 2024 by first class mail, and/or electronic means upon those listed below:

Debtor(s)
William E. Sullivan Jr.
3121 Holly Road
Philadelphia, PA 19154

Attorney for Debtor(s)
SHARON S. MASTERS, ESQUIRE
132 Overleaf Drive
Thorndale, PA 19372
**VIA ECF**

Trustee
KENNETH E. WEST ESQUIRE
830 Lansdowne Avenue (VIA ECF)
Drexel Hill, PA 19026
**VIA ECF**

Office of the US Trustee
United States Trustee
Office of the U.S. Trustee Robert N.C. Nix
Federal Building
900 Market Street Suite 320
Philadelphia, PA 19107

Date: November 15, 2024

/s/ Denise Carlon
Denise Carlon, Esquire
KML Law Group, P.C.
701 Market Street, Suite 5000
Philadelphia, PA 19106-1532
Phone: (215) 627-1322 Fax: (215) 627-7734
Attorneys for Movant/Applicant